CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2017 JUL 11 AM 8 11

FILED

BY _____

DEPUTY

1   Donald L. Harris
    Tucker P. Gannett
2   HARRIS, GANNETT & VARELA, PLLC
    3936 Avenue B, Suite D
3   Billings, MT  59102
    Telephone:    (406) 294-2000
4   Fax:    (406) 294-2010
    don@hgvlawfirm.com
5   tucker@hgvlawfirm.com

6   Attorneys for Plaintiffs

7

8

9              **MONTANA THIRTEENTH JUDICIAL DISTRICT COURT**
                           **YELLOWSTONE COUNTY**

10

11  JEFFREY W. BERGER, TAMI M. BERGER,      )      Cause No. **D V  1 7 - 0 9 4 5**
    WIBAUX 1, LLC, and PRO-FRAC             )
12  HEATING & TRUCKING, LLC,                )           **RUSSELL C. FAGG**
                                            )
13                        Plaintiffs,       )
                                            )            **COMPLAINT AND**
14        -vs-                              )        **DEMAND FOR JURY TRIAL**
                                            )
15                                          )
    BANK OF COLORADO, a Colorado            )           *120/139561*
16  Corporation,                            )
                                            )
17                        Defendant.        )
    _____

18

19        COME NOW plaintiffs Jeffrey W. Berger, Tami M. Berger, Wibaux 1, LLC, and Pro-

20  Frac Heating & Trucking, LLC and for their claims for relief against the defendant Bank of

21  Colorado allege as follows:

EXHIBIT

tabbies®

2

1.     Jeffrey and Tami Berger are married and reside in both Yellowstone County, Montana and Williams County, North Dakota.

2.     Wibaux 1, LLC is a Montana limited liability company that conducts farming and ranching operations in Montana, North Dakota, and South Dakota. The Bergers are the sole members of Wibaux 1, LLC.

3.     Pro-Frac Heating & Trucking, LLC is a single member, North Dakota limited liability company that does business in North Dakota. Jeffrey Berger is the sole member of Pro-Frac.

4.     The Bank of Colorado is a Colorado corporation that conducts banking business in Montana, North Dakota, and South Dakota.

5.     Beginning in 2013, the Bergers began using the Bank of Colorado to finance the purchase of agricultural land in Montana, North Dakota, and South Dakota for farming and ranching. Previously, the Bergers had used the Bank of Colorado to purchase a residence in Estes Park, Colorado and a commercial lot in Estes Park, Colorado. A special relationship existed between the Bergers and the Bank in which the Bergers had trust and confidence in the Bank and relied upon its advice and guidance in purchasing agricultural land and cattle.

6.     Based upon advice and encouragement from Bank of Colorado officials, the Bergers purchased five agricultural properties in Montana and one agricultural property located in both North Dakota and South Dakota between March 2013 and May 2015. In general, the Bank of Colorado financed about 50% of the purchase prices for these properties and the Bergers used their own funds for the balance of the purchase prices. These properties

1   were purchased by Wibaux 1, LLC.

2       7.      In December 2013, the Bank of Colorado also loaned Wibaux 1, LLC

3   $7,536,325 to purchase cattle for the Wibaux County, Montana ranches that Wibaux 1 had

4   purchased in March and August of 2013.  The maturity date for this Chattel Loan was January

5   1, 2019.

6       8.      In the summer of 2015, the Bergers asked the Bank of Colorado whether it

7   would be possible to consolidate their six real estate loans to make it easier for them to make

8   and keep track of their loan payments.  The Bank of Colorado agreed to do so.

9       9.      In September 2015, the Bank of Colorado proposed a $19,500,000 loan to

10  refinance the six real estate loans.  The terms proposed by the Bank of Colorado were

11  unfavorable to Wibaux 1, LLC because, among other reasons:  (a) some of the maturity dates

12  for the real estate loans were significantly shortened; (b) the Chattel Loan's maturity date was

13  shortened from January 1, 2019 to February 1, 2016 and required a lump sum payoff as a

14  condition for refinancing the six real estate loans; (c) the Bank of Colorado required a new

15  loan of $4,500,000, the Line of Credit Loan, which had a maturity date of February 26, 2016;

16  and (d) any default under the Chattel Loan or the Line of Credit Loan would trigger a default

17  of the new Consolidated Real Estate Loan.  The Bank's proposed $19,500,000 loan was also

18  unfavorable to the Bergers and Pro-Frac because it required their personal guarantees on all

19  three loans.

20      10.     In discussing its proposal with the Bergers, the Bank of Colorado represented

21  that the short deadlines were because the Bank had not been able to complete all of the

*Berger, et al. v. Bank of Colorado*
Complaint and Demand for Jury Trial - Page 3

paperwork necessary to finalize the maturity dates.  The Bank also represented that it would extend the maturity dates of the Chattel Loan and the Line of Credit Loan as long as the Bergers continued to make loan payments in roughly the same amounts as they had in the past.  The Bank also represented that while its refinancing proposal was necessary to comply with the Bank's lending guidelines, the proposal was a formality that could and would be modified to enable the Bergers to make loan payments that were similar to those loan payments they had been making.

11.     Based upon the Bank of Colorado's representations and assurances, Wibaux 1, LLC and the Bergers executed the $19,500,000 Consolidated Real Estate Loan agreement, Loan #2910005994, on November 25, 2015; executed a modification to the Chattel Loan, Loan #900914115, on October 2, 2015; and executed the Line of Credit Loan, Loan #2910005995, on October 2, 2015.

12.     In March of 2016, the Bank of Colorado extended the maturity dates of the Chattel Loan and the Line of Credit loan to May 1, 2016.  In August of 2016, the Bank of Colorado extended the maturity dates of the Chattel Loan and the Line of Credit Loan to October 1, 2016.

13.     Despite its previous representations and assurances, the Bank of Colorado refused to extend the October 1, 2016 maturity dates for the Chattel Loan and Line of Credit even though Wibaux 1, LLC had substantially performed its obligations under those agreements and was not in default.  On October 14, 2016, the Bank of Colorado declared that Wibaux 1, LLC was in default of the Chattel Loan, Line of Credit loan, and Consolidated

1  Real Estate Loan because the Chattel Loan and Line of Credit loan were not fully repaid by

2  October 1, 2016.

3       14.    On November 18, 2016, the Bergers received a banker's box full of documents

4  from the Bank of Colorado which contained a Forbearance Agreement.  In its Forbearance

5  Agreement, the Bank of Colorado offered to delay foreclosure proceedings if the Bergers

6  would consent to onerous terms for the repayment of the three loans.  The Bergers retained

7  counsel to try to negotiate more reasonable terms with the Bank of Colorado.  In response, the

8  Bank of Colorado made the terms of the Forbearance Agreement even more onerous.

9       15.    To prevent imminent foreclosure, to preserve the market value the ranches

10  already listed for sale, and to prevent the disruption to its farming and ranching operations, the

11  Bergers were forced to sign the Forbearance Agreement and related documents even though

12  its terms were unconscionable, assessed unlawful liquidated damages, and constituted a

13  contract of adhesion.  The Forbearance Agreement was presented to the Bergers by the Bank

14  of Colorado's counsel in Billings, Montana and was signed in Billings, Montana.

15       16.    Despite being compelled by the terms of the Forbearance Agreement to sell

16  most of their cattle at unfavorable prices and at the wrong time for tax purposes, the Bergers

17  have continued to make substantial loan payments to the Bank of Colorado and would not be

18  in default if the Bank of Colorado had agreed to extend the maturity dates for the Chattel

19  Loan and the Line of Credit loan as the Bank represented it would do and had done until

20  October 1, 2016.

21       17.    Wibaux 1, LLC, the Bergers, and Pro-Frac have been unable to meet the

onerous and unconscionable terms of the Forbearance Agreement despite their good faith efforts to do so. The Bank of Colorado is unwilling to negotiate any reasonable modifications to the Forbearance Agreement.

18.     The Bank intends to commence foreclosure proceedings under the Forbearance Agreement that will cause the plaintiffs to suffer substantial damages and irreparable harm beyond those damages that the plaintiffs have already incurred because of the Bank of Colorado's wrongful conduct.

**FIRST CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION**

19.     The allegations set forth in paragraphs 1 through 18 above are incorporated by reference herein.

20.     The Bank of Colorado negligently misrepresented to the plaintiffs that it would extend the maturity dates of the Chattel Loan and Line of Credit Loan when the Bank presented the terms of the $19,500,000 Consolidated Real Estate Loan. The plaintiffs justifiably relied upon those misrepresentations which were designed to induce the plaintiffs to accept the Bank's proposed terms. The Bank's negligent misrepresentations have caused the plaintiffs to suffer substantial damages which they are entitled to recover under Montana law.

**SECOND CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY**

21.     The allegations set forth in paragraphs 1 through 20 above are incorporated by reference herein.

22.     The plaintiffs and the Bank developed a special relationship in which the Bank

rendered advice to the Bergers about purchasing farm and ranch properties, advised them about cattle purchases, and advised them about financing. The Bank owed the Bergers a fiduciary duty to act in their best interests. The Bank breached the fiduciary duty it owed to the plaintiffs and caused them to suffer substantial damages which they are entitled to recover under Montana law.

### THIRD CLAIM FOR RELIEF – FRAUD AND UNDUE INFLUENCE

23.     The allegations set forth in paragraphs 1 through 22 above are incorporated by reference herein.

24.     The Bank's representations that it would continue the maturity dates of the Chattel Loan and the Line of Credit Loan as set forth above were false; the Bank either knew those representations were false or did not know if the representations were true; the plaintiffs reasonably and justifiably relied upon the Bank's false representations; the Bank's misrepresentations were material and designed to induce the plaintiffs to rely upon those misrepresentations in entering into the Consolidated Real Estate Loan, the Chattel Loan, and the Line of Credit Loan; the plaintiffs did not know the Bank's representations were false; and the plaintiffs have suffered substantial damages caused by the Bank's misrepresentations.

25.     In addition to recovering damages, the plaintiffs are entitled to rescind the Forbearance Agreement pursuant to M.C.A. § 28-2-1711 because of the Bank's fraud and undue influence and because the Forbearance Agreement was obtained through duress.

26.     Due to the Bank's fraud, the plaintiffs are also entitled, pursuant to M.C.A. § 28-2-1611, to have the Chattel Loan, Line of Credit Loan, and Consolidated Real Estate Loan

1   revised to establish their intended maturity dates and the intended application of loan

2   payments.

### FOURTH CLAIM FOR RELIEF –
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

27.     The allegations set forth in paragraphs 1 through 26 above are incorporated by reference herein.

28.     The Bank breached the duty of good faith and fair dealing it owed to the plaintiffs by failing to extend the maturity dates for the Chattel Loan and the Line of Credit Loan, thereby causing the plaintiffs to suffer damages to which they are entitled to recover under Montana law.

### FIFTH CLAIM FOR RELIEF -
### CONTRACTIVE ADHESION, UNLAWFUL LIQUIDATED DAMAGES, AND
### UNCONSCIONABLE TERMS

29.     The allegations set forth in paragraphs 1 through 28 above are incorporated by reference herein.

30.     The Forbearance Agreement is unenforceable because its terms provide for unlawful liquidated damages, its terms are unconscionable, and the Forbearance Agreement is an impermissible contract of adhesion.

### SIXTH CLAIM FOR RELIEF – PUNITIVE DAMAGES

31.     The allegations set forth in paragraphs 1 through 30 above are incorporated by reference herein.

32.     The Bank of Colorado acted with actual malice or actual fraud in committing

*Berger, et al. v. Bank of Colorado*
Complaint and Demand for Jury Trial - Page 8

the wrongful conduct set forth in the First, Second, and Fourth Claims for Relief, thereby

entitling the plaintiffs to recover punitive damages pursuant to M.C.A. § 27-1-221.

WHEREFORE, having set forth their claims for relief, the plaintiffs pray:

1.    That judgment be entered for the plaintiffs and against defendant Bank of Colorado on all claims for relief set forth herein;

2.    That judgment be entered for the plaintiffs and against defendant Bank of Colorado for all compensatory and punitive damages the plaintiffs are entitled to recover under Montana law;

3.    For the plaintiffs' attorney's fees and costs incurred herein; and

4.    For such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all triable issues.

DATED this 10th day of July, 2017.

HARRIS, GANNETT & VARELA, PLLC

By _____
DONALD L. HARRIS
TUCKER P. GANNETT
3936 Avenue B, Suite D
Billings, MT 59102
Attorneys for Plaintiff

*Berger, et al. v. Bank of Colorado*
Complaint and Demand for Jury Trial - Page 9