IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JEFFREY W. BERGER, TAMI M. BERGER, WIBAUX 1, LLC, PRO-FRAC HEATING & TRUCKING, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF COLORADO,<br><br>Defendant. | CV 17-104-BLG-SPW-TJC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE** |

Plaintiffs Jeffrey W. Berger, Tami M. Berger, Wibaux 1, LLC, and Pro-Frac Heating & Trucking LLC ("Plaintiffs") initiated this action in Montana state court against Defendant Bank of Colorado (the "Bank") arising out of the financing of agricultural land Plaintiffs purchased in Montana, North Dakota and South Dakota. Plaintiffs bring claims for negligent misrepresentation, breach of fiduciary duty, fraud and undue influence, breach of the duty of good faith and fair dealing, contractive adhesion, and punitive damages. (Doc. 8.)

The Bank removed the matter to this Court invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 18.) Presently before

1

the Court is the Bank's Motion to Transfer Venue. (Doc. 3.) The motion is fully briefed and ripe for the Court's review. (Docs. 4, 15, 16, 19.)

Having considered the parties' submissions, the Court finds the Bank's motion should be **DENIED**.[1]

I.  BACKGROUND

Plaintiffs Jeffrey and Tami Berger (the "Bergers") reside in both Montana and North Dakota. (Docs. 15-1 at ¶ 6; 15-2 at ¶ 5.) Plaintiff Wibaux 1, LLC ("Wibaux 1") is a Montana limited liability company that conducts farming and ranching operations in Montana, North Dakota, and South Dakota. (Docs. 3-1 at ¶ 5; 15-1 at ¶ 5; 15-2 at ¶ 6.) The Bergers are the sole members of Wibaux 1. (Doc. 8 at ¶ 2.) Plaintiff Pro-Frac Heating & Trucking, LLC ("Pro-Frac") is a North Dakota limited liability company that does business in North Dakota.[2] (Doc. 3-1 at ¶ 6.) Jeffrey Berger is the sole member of Pro-Frac. (Doc. 8 at ¶ 3.) Defendant

---

[1] A motion to change venue is a non-dispositive pre-trial matter, and is therefore within the province of a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A). *RD Rod, LLC v. Mont. Classic Cars, LLC*, 2012 WL 6632185, *7, n.1 (D. Mont. Dec. 19, 2012) ("A change of venue ruling is a non-dispositive matter which need not be submitted as a 'proposed findings of fact and recommendations' to the District Judge as otherwise required under 28 U.S.C. § 636(b)(1)(B) with respect to dispositive motions.").

[2] The Bank notes that Jeffrey Berger incorporated a similarly named entity, called Pro-Frac Heating & Trucking RBU, LLC in Colorado and listed Windsor, Colorado as its principle place of business. (Doc. 16-1.)

Bank of Colorado is a Colorado corporation that operates solely in Colorado. (Doc. 3-1 at ¶¶11, 12.)

In 2012, the Bergers financed the purchase of a residence and a commercial lot in Estates Park, Colorado through the Bank. (Docs. 3-1 at ¶ 7; 3-5; 3-6; 3-7; and 8 at ¶ 5.) Then, in 2013, the Bank loaned additional funds to the Bergers to finance the purchase of agricultural land located in Montana, North Dakota, and South Dakota. (Docs. 3-1 at ¶ 19; 8 at ¶ 5.) The financing agreements associated with the purchase of the agricultural land are the subject of this lawsuit.

Between March 2013 and May 2015, Plaintiffs purchased five ranches in Montana, and one ranch located in both North Dakota and South Dakota. (Docs. 3-12; 3-13; 15-1 at ¶ 5; 15-2 at ¶ 6; 8 at ¶ 6.) The ranch properties were purchased in the name of Wibaux 1. (*Id.*) The Bank provided approximately 50% of the financing for the purchase prices of the properties, and Plaintiffs used their own funds for the balance. (Doc. 8 at ¶ 6.) In December 2013, the Bank also loaned Plaintiffs over $7.5 million to buy cattle for the Montana ranches (the "Chattel Loan"). (Docs. 3-1 at ¶ 19; 8 at ¶ 7.)

In the summer of 2015, Plaintiffs sought to consolidate their six real estate loans, and the Bank agreed to do so. (Doc. 15-1 at ¶ 10.) As a result, in late November 2015, Plaintiffs executed a $19.5 million Consolidated Real Estate Loan Agreement. (*Id.*) As part of the Bank's refinancing proposal, the Bank required

3

Plaintiffs to agree to a modification of the Chattel Loan, and a new $4.5 million Line of Credit Loan. (*Id.*) Plaintiffs allege the terms of the refinancing proposal were unfavorable, in that certain maturity dates were shortened, the new Line of Credit Loan was required, any default under the Chattel Loan or the Line of Credit Loan would trigger a default of the Consolidated Real Estate Loan, and personal guarantees were required on all three loans. (Doc. 8 at ¶ 9.) Despite the unfavorable terms, Plaintiffs allege they agreed to the refinancing proposal based on the Bank's representations and assurances that the proposed terms were only a formality, and that the Bank would extend the maturity dates of the Chattel Loan and Line of Credit Loan as long as Plaintiffs continued to make loan payments that were roughly the same amount as they had been paying. (*Id.* at ¶¶ 10-11; Doc. 15-1 at ¶ 10.)

In March 2016, and again in August 2016, the Bank extended the maturity dates of the Chattel Loan and Line of Credit Loan. (Docs. 8 at ¶ 12; 15-1 at ¶11.) However, Plaintiffs allege the Bank declined to extend the maturity dates in October 2016, and declared the Chattel Loan, Line of Credit Loan and Consolidated Real Estate Loan in default on October 14, 2016. (Doc. 8 at ¶ 13.)

On November 18, 2016, Plaintiffs received a banker's box of documents from the Bank which contained a Forbearance Agreement. (Doc. 15-1 at ¶ 11.) Plaintiffs retained counsel in Billings, Montana to review the agreement and try to

negotiate better terms with the Bank. (Doc. 15-1 at ¶ 11; Doc 15-3.) Plaintiffs allege the efforts were unsuccessful, and they were compelled to sign the Forbearance Agreement to prevent imminent foreclosure, even though the terms of the agreement were onerous and unconscionable. (Doc. 8 at ¶ 15.) Plaintiffs were ultimately unable to meet the terms of the Forbearance Agreement. (*Id.* at ¶ 17.) Plaintiffs allege the Bank is unwilling to negotiate any reasonable modifications to the Forbearance Agreement, and instead intends to commence foreclosure proceedings. (*Id.* at ¶¶ 17-18.) Plaintiffs assert that they would not be in default if the Bank had agreed to extend the maturity dates for the Chattel Loan and Line of Credit Loan as it had represented it would do. (*Id.* at ¶ 16.)

## II. DISCUSSION

### A. Legal Standard

Changes of venue are governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Whether to transfer a case is within the Court's discretion, and a decision whether to do so must be based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). There is no uniform list of factors that courts

must weigh to determine whether transfer is appropriate in a particular case. *Id.* Factors that are frequently considered include:

1. the plaintiff's choice of forum,
2. the location where the relevant agreements were negotiated and executed,
3. the convenience of witnesses,
4. the ability of the two forums to compel non-party witnesses to testify,
5. the respective parties' relative contacts with the forums,
6. the state that is most familiar with the governing law,
7. the relative congestion in the two forums,
8. the length of time action has already been pending in the transferor forum,
9. ease of access to sources of proof, and
10. whether there is a 'local interest' in either of the forums.

*Hillerich & Bradsby Co. v. Ace Am. Ins. Co.*, 2012 WL 2359488, *1 (D. Mont. June 20, 2012); *Jones*, 211 F.3d at 498-499.

The moving party bears the burden to establish why the forum should be changed. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). When a transfer "would only shift the inconvenience from defendant to plaintiff, the motion to transfer should be denied." *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). "[A] transfer is not available to a forum which is equally convenient or inconvenient to the original forum." *Id.*

6

It is undisputed that venue is proper in the District of Montana. Also, venue would have been proper in the District of Colorado as it is a judicial district in which the Bank resides, and is where a substantial part of the events or omissions giving rise to the claim occurred.[3] 28 U.S.C. § 1391(b). Therefore, the Court must weigh the relevant factors to determine whether a change of venue will serve the interests of justice and be more convenient for the parties and witnesses.

The Bank argues this action should be transferred to the District of Colorado because almost all of the events giving rise to the claims occurred in Colorado, almost all of the Bank's witnesses live in Colorado, and Plaintiffs are North Dakota residents who have significant contacts with Colorado. Plaintiffs counter that this action should remain in Montana because the case relates to the disposition of approximately 80,000 acres of real property located in Montana, the

---

[3] Plaintiffs do not contest that this action could have been initially filed in the District of Colorado. Plaintiffs argue, however, that the Bank must assert a compulsory counterclaim for foreclosure, and that claim must be adjudicated in Montana because the property to be foreclosed upon is located in Montana. First, for purposes of determining whether venue should be transferred, the Court looks only at the case as it existed at the time it was filed. *RD Rod, LLC*, 2012 WL 6632185 at *7 ("[T]he court's focus is on the case as it was originally filed without regard to any 'counterclaims interposed by the party seeking transfer.'"). Here, no counterclaim has been asserted. Second, even assuming the Bank must file a counterclaim for foreclosure, the counterclaim would equally have to be filed in Montana, South Dakota and North Dakota, as the real estate securing the agreements at issue are located in all three jurisdictions. As such, the Court is not convinced that there can be one proceeding foreclosing all of the real property collateral.

Bergers reside here, and have had significant ongoing contacts with Montana for at least 24 years.

**B.    Consideration of Factors**

    1.    Plaintiffs' Choice of Forum

"[A] plaintiff's choice of forum should rarely be disturbed." *Anderson*, 624 F. Supp. at 1204. The Ninth Circuit has cautioned that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, the plaintiff's choice is given less deference when the plaintiff is not a resident or citizen of the forum state. *Piper Aircraft Co. Reyno*, 454 U.S. 235, 255-256 (1981). In addition, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

The Bank argues Plaintiffs' decision to file this action in Montana should be given no deference because they have minimal contacts with Montana and the operative facts did not occur here. The Bank asserts Plaintiffs' residence and principle place of business is in North Dakota. The Bank points out that Plaintiffs' tax returns show their residence is in Williston, North Dakota, and Plaintiffs used their North Dakota address on the agreements at issue in this case. (Doc. 3-2; 3-

8

10; 3-18.) The Bank also argues Plaintiffs have greater contacts with Colorado than Montana because they own a home in Estes Park, Colorado (Doc. 3-3), keep a vehicle there, and they spend a substantial amount of time in Colorado. With regard to the operative facts, the Bank contends Plaintiffs approached the Bank in Colorado, all the negotiations occurred in Colorado, most of the agreements were executed in Colorado,[4] and the loans were to be administered from Colorado and repaid to the Bank in Colorado.

Plaintiffs counter that for the past two years they have primarily lived in Montana, spending 80% of their time here. (Docs. 15-1, 15-2.) Plaintiff Jeff Berger states he was a 1988 graduate of Montana State University, and after moving to Billings, Montana in 1993, has been continuously involved with Montana agriculture for the last 24 years. (Doc. 15-1.) Plaintiff Tami Berger, likewise describes a long-standing presence in Montana. (Doc. 15-2.) Plaintiffs acknowledge they have a home and vehicle in Colorado, but assert they have spent little time in Colorado during in the past two years due to the downturn in the oil business. (Docs. 15-1, 15-2.) Plaintiffs state they now primarily reside in Montana, where they are involved in the day-to-day management of the five Montana ranches that are the subject of this lawsuit. (*Id.*) In addition to the five

---

[4] It appears that the Credit Agreements were signed in either Colorado or North Dakota. (*See e.g.* Doc. 3-13.)

Montana ranches, the Plaintiffs represent that they own a home in Billings, and have approximately 20 vehicles in Montana. (*Id.*) Plaintiffs further argue that the operative facts did occur in Montana. Plaintiffs state the Bank's employees and officers have visited the Montana ranches at least twice a year since February 2013, and note the Forbearance Agreement was signed in Montana. (*Id.*)

Although the parties paint different pictures of the facts relating to where Plaintiffs live, the Court finds Plaintiffs' choice of forum is entitled to deference. Recognizing it is the Bank's burden to establish that transfer is appropriate, the Bank has not shown that Plaintiffs do not have sufficient contacts with Montana to be considered residents. Plaintiffs own five ranches in Montana (comprising approximately 80,000 acres), a home in Billings, Montana, and they reportedly spend a substantial amount of time in Montana. Plaintiffs do not dispute they used a North Dakota address for tax purposes, and on the banking documents at issue in this case. But the tax documents cited by the Bank are from 2013 and 2014. (Doc. 3-2.) Plaintiffs state they have been primarily living in Montana since 2016. Therefore, the tax documents are not necessarily inconsistent with Plaintiffs assertions. It also appears that at least some of the operative facts occurred in Montana. In particular, the Forbearance Agreement was executed in Billings, Montana in December 2016, and the agreement was at least partially negotiated within the state. The timeframe of this execution is also consistent with Plaintiffs'

10

assertion that for the past two years, they have primarily lived in Montana. It is also noteworthy that the loans at issue in this case concern a large amount of property that is located within Montana.

Therefore, the Court finds this factor weighs against transfer.

2. Location Where Relevant Agreements Were Negotiated and Executed

The Bank argues Plaintiffs' claims derive from all of the Credit Agreements, including the Chattel Loan, Line of Credit Loan, and Consolidated Real Estate Loan, which were negotiated and prepared in Colorado. Plaintiffs counter that the focus of this litigation is on the Forbearance Agreement, which was negotiated from and signed in Montana.

Although the Forbearance Agreement was the final agreement preceding this lawsuit, Plaintiffs' claims clearly relate to all of the underlying financing agreements. For example, Counts One and Three specifically refer to the Chattel Loan, Line of Credit Loan, and Consolidated Real Estate Loan. (Doc. 8 at ¶¶ 20, 24, 26.) Count Four references the Chattel Loan and Line of Credit Loan (*Id.* at ¶ 28), and Count Five refers to the Forbearance Agreement. (*Id.* at ¶ 30.) Thus, resolution of this lawsuit will necessarily entail consideration of the facts surrounding all of the underlying loan transactions.

Because the Credit Agreements were negotiated and signed in Colorado, but the Forbearance Agreement was signed and at least partially negotiated in Montana, the Court finds this factor is neutral.

        3.        <u>Convenience of Witnesses</u>

The District of Montana is not a convenient forum for the Bank's witnesses who reside in Colorado. Likewise, the District of Colorado is not a convenient forum for Plaintiffs' witnesses who reside in Montana. "A Court should not transfer venue when the transfer would merely shift the inconvenience from the defendant to the plaintiff." *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *2. Accordingly, the Court finds this factor weighs against transfer.

        4.        <u>Ability of Forum to Compel Non-Party Witnesses to Testify</u>

The Bank has identified 22 employees as potential non-party witnesses. The Bank asserts almost all of the non-party witnesses reside in Colorado, and none of them are within this Court's subpoena power. The Bank further contends three of the potential witnesses are no longer employed by the Bank, and are therefore, unlikely to agree to attend trial voluntarily.

"The availability of witnesses is obviously an important factor to be considered in determining the propriety of a discretionary transfer." *Anderson*, 634 F.Supp. at 1206. Generally, the moving party's inability to use compulsory process to compel the attendance of unwilling witnesses weighs in favor of

transfer. *Id.* However, the Court should consider whether testimony by deposition would be adequate, and in doing so, must assess the nature and materiality of the testimony of the unwilling witnesses. *Id.* Although a description of the witnesses' anticipated testimony "is not an indispensable requirement to the granting of a transfer, the lack of specificity is an important consideration in assessing the weight to be accorded the defendant's claim of unavailability." *Id.* The Court should not grant a transfer based on the mere fact the defendant wishes to call witnesses who reside in a transferee district. *Id.* at 1207. The party must make a "sufficient showing that the witnesses will not attend, or will be severely inconvenienced if litigation proceeds in the transferor forum." *Id.*

Here, all but three of the Bank's 22 potential witnesses are current Bank employees. Thus, the majority of the witnesses identified by the Bank "will presumably be willing to testify . . . regardless of inconvenience, precisely because he or she is a [Bank] employee." *Grady v. CenturyLink Commc'ns, LLC*, 2015 U.S. Dist. LEXIS 158861, *7 (D. Mont. Nov. 24, 2015). The Bank has not provided any information to the contrary. Further, as for the three former employees, the Bank has not identified who they are, or provided any specific information about what their expected testimony will be. Therefore, the Court has no information upon which to assess the necessity and materiality of their testimony, or to find that testimony by deposition would not be adequate.

Accordingly, the Court finds this factor weighs slightly against transfer.

     5.     <u>Parties' Relative Contacts with the Forums</u>

The Bank argues it operates solely in Colorado, conducts no business in Montana, and does not have any branches, offices, or employees in Montana. The Bank further argues Plaintiffs only own "some" real estate in Montana, but they own a $1 million dollar home, investment property, and a car in Colorado. (Doc. 4 at 30.) Plaintiffs counter that the Bank has had numerous significant contacts with Montana simply by virtue of investing nearly $20 million in Plaintiffs' Montana ranches. Plaintiffs also claim the Bank's employees and officers have visited and stayed at the Montana ranches at least two times a year, every year, since February 2013.

Aside from loaning Plaintiffs money for the purchase of the five Montana ranches, it does not appear the Bank has any significant contacts with Montana. At the same time, Plaintiffs' contacts with Colorado certainly do not appear to be more significant than their contacts with Montana. On balance, the Court finds this factor weighs marginally in favor of transfer.

     6.     <u>State that is Most Familiar with Governing Law</u>

The Bank argues the financing agreements Plaintiffs signed contain choice of law provisions that provide Colorado law will govern Plaintiffs' claims. The Bank further argues that the District of Colorado is more familiar with Colorado

14

law's unique facets, including Colorado's Credit Agreement Statute of Frauds, C.R.S. § 38-1-124, economic loss rule, and law on jury trial waivers. Plaintiffs counter that the choice of law provision in the Forbearance Agreement should not be enforced because the agreement is unconscionable and they are seeking its rescission. Plaintiffs also assert that because Montana has the most significant relationship with the land at issue, Montana law should control.

At this point, Plaintiffs have not established that the choice of law provisions are per se unenforceable. Therefore, at this juncture in the litigation, the Court declines to resolve whether Colorado or Montana law will ultimately apply. Given that the agreements call for the application of Colorado law, however, there is a likelihood that Colorado law will be implicated. Accordingly, this factor weighs in favor of a transfer.

### 7. Relative Congestion of the Forums

Courts may consider the statistics compiled by the Administrative Office of the United States Courts to assess the relative docket congestion between the transferee forum and the transferor forum. *RD Rod, LLC*, 2012 WL 6632185 at *16-17; *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *3. For the 12-month period ending in March 2017, the weighted filings per judge in the District of Montana was 370 cases, and in the District of Colorado it was 535 cases. *See* Administrative Office of the United States Courts, *U.S. District Courts-Combined*

15

*Civil and Criminal Federal Court Management Statistics* (March 31, 2017) (available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/03/31-1.) The statistics also show the average time from filing to trial was 25.1 months in the District of Montana and 28.2 months in the District of Colorado. *Id.* Therefore, this factor weights against transfer.

        8.        <u>Length of Time Action Has Been Pending in Transferor Forum</u>

A party's diligence in seeking to transfer venue is a factor courts should take into consideration. *Anderson*, 634 F. Supp. at 1208. Here, the Bank acted diligently in requesting transfer by filing this motion one week after removing the action from state court. (Docs. 1, 3.) Further, this action is still in its preliminary stages, and a scheduling order has not yet been issued. Thus, this factor does not weigh against transfer.

        9.        <u>Ease of Access to Sources of Proof</u>

The Bank argues the original loan agreements and written communications between the Bank and Plaintiffs are located in Colorado, and it would be unfair to force the Bank to haul the documents to Montana when Colorado is more convenient. Plaintiffs counter that the Bank has all of the relevant documents stored electronically, and its discovery obligation for production of those documents does not differ between Montana and Colorado.

16

Due to "technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, 1362 (N.D. Cal. 2007). Thus, courts have recognized that this factor has a diminished importance, except in cases where there is immovable evidence located in the transferee forum. *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *4; *Grady*, 2015 U.S. Dist. LEXIS 158861 at *5. There is no immovable evidence at issue in this case. Therefore, the Court considers this factor neutral.

  10. <u>Local Interest</u>

The Bank argues Colorado has a more significant interest in the disposition of this case than Montana does because the Bank loaned Plaintiffs millions of dollars from Colorado. The Bank characterizes Montana's interest as being "derived only from North Dakota residents with second homes in Montana and Colorado." (Doc. 4 at 33.) As discussed, Plaintiffs have sufficient contacts with Montana to warrant deference to their choice of forum. Further, this action relates to a significant amount of land located with the state of Montana. Thus, Montana clearly has a local interest in this dispute. Accordingly, the Court finds this factor weighs against transfer.

/ / /

/ / /

## III. CONCLUSION

As discussed above, the Bank's absence of a physical presence in Montana, the fact Colorado law may apply in this case, and the short period of time this action has been pending in Montana, support the Bank's motion. On the other hand, all the other factors are either neutral or weigh against transferring venue. Because balancing all of the relevant factors does not lead the Court to the firm conclusion that transfer is appropriate, the Court concludes the Bank has not met its burden of establishing that venue should be changed.

Accordingly, affording appropriate deference to Plaintiffs' choice of venue, and considering all of the foregoing factors, **IT IS HEREBY ORDERED** that the Bank of Colorado's Motion to Transfer Venue is **DENIED**.

**IT IS ORDERED**.

DATED this 27th day of November, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge